**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Karmen Thornton, | No. CV-20-00460-TUC-JCH (EJM) |
| Plaintiff, | **ORDER** |
| v. | |
| Ethicon Incorporated, et al., | |
| Defendants. | |

Before the Court is United States Magistrate Judge Eric J. Markovich's Report and Recommendation ("R & R") recommending the Court grant Defendants' Motion for Summary Judgment. (Doc. 96.) Plaintiff Karmen Thornton ("Plaintiff") objected to the R & R and Defendants responded. (Docs. 97, 99). The Court will **adopt in part and reject in part** the R & R. Defendants' Motion for Summary Judgment will be granted in part and denied in part; Defendants' Supplemental Motion for Summary Judgment will be granted.

I.    **BACKGROUND**

This is a products liability action involving a pelvic mesh device manufactured and sold by Defendants Ethicon, Inc., and Johnson & Johnson. On July 13, 2006, Plaintiff was implanted with Defendants' TVT-O[1] device for the treatment of stress urinary incontinence with Dr. Vicky Sherman performing the implantation surgery. (Doc. 1 at 4; Doc. 37 at 1.) Plaintiff alleges Defendants' TVT-O device is defective and caused her serious injury. *Id.* She filed suit directly in the Southern District of West Virginia on May 13, 2016 as part of

---

[1] Transobturator urethral sling. (Doc. 37 at 1.)

a multidistrict litigation ("MDL") proceeding. (Doc. 1.) Her case was transferred to this Court on October 28, 2020. (Docs. 61, 63.)

In the MDL, Defendants moved for summary judgment on all of Plaintiff's 18 claims[2] arguing her claims are barred by the statute of limitations. They also argue they are entitled to judgment in their favor for reasons particular to all but one[3] of her claims. (Doc. 29.) In response, Plaintiff withdrew ten of her claims (the "Withdrawn Claims").[4] (Doc. 37.) The following claims remain: Negligence (Count I), Strict Liability—Failure to Warn (Count III), Strict Liability—Design Defect (Count V), Negligent Infliction of Emotional Distress (Count X), Gross Negligence (Count XIV), Punitive Damages (Count XVII),[5] and Discovery Rule and Tolling (Count XVIII).[6]

## II.    STANDARDS OF REVIEW

### a.  Report and Recommendation Standard of Review

The Court reviews de novo the objected-to portions of the R & R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the R & R. *See Johnson v. Zema Systems Corp.*, 170 F.3d 734, 736 (7th Cir. 1999); *Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

---

[2] Negligence (Count I), Strict Liability–Manufacturing Defect (Count II), Strict Liability–Failure to Warn (Count III), Strict Liability–Defective Product (Count IV), Strict Liability–Design Defect (Count V), Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional Distress (Count X), Breach of Express Warranty (Count XI), Breach of Implied Warranty (Count XII), Violation of Consumer Protection Laws (Count XIII), Gross Negligence (Count XIV), Unjust Enrichment (Count XV), Punitive Damages (Count XVII), and Discovery Rule and Tolling (Count XVIII). *See* Doc. 1.
[3] Strict Liability—Design Defect (Count V).
[4]  Strict Liability—Manufacturing Defect (Count II), Defective Product (Count IV), Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count IX), Unjust Enrichment (Count XV), Consumer Fraud (Count XIII), Breach of Implied Warranty (Count XII), and Breach of Express Warranty (Count XI).
[5] A claim for punitive damages is not a separate claim but a type of relief. *See Taylor v. Bos. Sci. Corp.*, No. CV-19-05499-PHX-DJH, 2020 WL 4592923, at *1 n.2 (D. Ariz. Aug. 4, 2020).
[6] The discovery rule and tolling are doctrines designed to alleviate the effect of the statute of limitations when a plaintiff is not aware of the facts underlying her claim. *See generally, Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995) (en banc).

### b.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute of a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. At the summary judgment stage, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in the nonmovant's favor. *Eldridge-Murphy v. Clark County School Dist.*, No. 2:13-cv-02175-JCM-GWF, 2015 WL 224416, at *3 (D. Nev. 2015) (citing *Anderson*, 477 U.S. at 249). "But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted." *Eldridge-Murphy,* 2015 WL 224416, at *3 (citing *Anderson*, 477 U.S. at 249–50).

### III.    R & R ANALYSIS

Magistrate Judge Markovich makes three recommendations in his R & R. He recommends: (1) granting Defendants summary judgment on the Withdrawn Claims; (2) granting Defendants summary judgment on the remaining claims on statute of limitations grounds; and (3) denying Defendants' Supplemental Motion For Summary Judgment as moot.

### a.  The Withdrawn Claims

Magistrate Judge Markovich recommends granting summary judgment in Defendants' favor on the Withdrawn Claims. (Doc. 96 at 2-3.) Plaintiff did not object to this recommendation. *See* Doc. 97. Clear error is the standard of review.

The R & R lays out the Complaint's 18 claims. (Doc. 96 at 2.) The R & R sets forth that before the MDL court's transfer order, Defendants moved for summary judgment on all claims on statute of limitations grounds and the merits of all claims except Count V. (Doc. 96 at 2.) In response to Defendants' summary judgment motion, Plaintiff withdrew her claims in Counts II, IV, VI, VII, VIII, IX, XV, XIII, XII and XI. (Doc. 37 at 14.) The

recommendation on the Withdrawn Claims is not clearly erroneous, and it will be adopted. *See* Fed. R. Civ. P. 56(a), (e)(3); *Paseka v. Ethicon, Inc.*, No. CV-20-00100-PHX-SRB, 2020 WL 8175427, at *3 (D. Ariz. Nov. 9, 2020) (granting summary judgment on unopposed claims).

Summary judgment will be granted on Counts II, IV, VI, VII, VIII, IX, XI, XII, XIII and XV.

### b.  Discovery Rule and Tolling (Count XVIII)

Judge Markovich recommends granting summary judgment in Defendants' favor on the grounds that Plaintiff's remaining claims are barred by Arizona's two-year statute of limitations for products liability actions. (Doc. 96 at 8.) Plaintiff objects to this recommendation. (Doc. 97 at 3-10.) Review is de novo.

### i.  Facts

Plaintiff had lumbar fusion surgery in 2005. (Doc. 29-2 at 24-25.) She suffered from muscle spasms in her lower back and pelvic region which her doctors have related to this 2005 lumbar fusion surgery. *Id*. at 119. She underwent a hysterectomy and was implanted with Defendants' TVT-O mesh device by Dr. Vicki Sherman on July 13, 2006. (Doc. 1 at 4; Doc. 37 at 1.) She underwent these procedures for the treatment of stress urinary incontinence, abnormal uterine bleeding, and uterine fibroids. (Doc. 37 at 1.) After implantation of the TVT-O device, Plaintiff suffered from chronic pelvic pain and dyspareunia.[7] *Id*.

In 2012, Plaintiff spoke with a friend, Nancy, who had also had a hysterectomy and pelvic mesh procedure, and they discussed stress urinary incontinence and chronic pain. (Doc. 97-2 at 23-24.) Plaintiff testified that at that point in time, she had not attributed any symptoms to those procedures, but rather to her lumbar fusion which she had in 2005. *Id*. at 24-25. She decided to contact an attorney after her conversation with Nancy. *Id*. at 25.

Plaintiff testified that she first contacted an attorney in 2012 after seeing a telephone number for the Cartmell firm on television. *Id*. at 25-26. She testified that she understood

---

[7] Pain with intercourse.

the television commercial to be offering medical information and admitted that the commercial included the attorney's telephone number. (Doc. 97-2 at 26.) In response to questioning on whether she understood, from the television advertisement, that some of the things she was experiencing were related to the mesh, Plaintiff testified: "Could be. I didn't understand it. It was a possibility." *Id*. at 27. Plaintiff further testified: "Q. Okay. So it's something you were considering in 2012; is that right? A. Mm-hmm. Q. That's a yes? A. Yes." *Id*. at 27.

Plaintiff completed a form authorizing the Cartmell law firm to obtain her medical records. *Id*. at 27-28. Plaintiff testified that she recalled receiving correspondence from them saying: "…that – this is after they had obtained the surgical notes from my surgery – was, is that 'Yes, you had mesh implanted with this that could attribute to you.' That's really the only information I got from them." *Id*. at 31-32. She received this information in 2012 or 2013. *Id*. at 32.

Plaintiff testified that she inquired of the Cartmell law firm, that the firm did not file a lawsuit on her behalf, and she did not know whether it rejected the claim or not. *Id*. at 31. She also testified that she fired the Cartmell firm because she did not feel like she was getting representation because they had not really "done anything," so she was referred to Wexler Wallace LLP. *Id*. at 29-30. Plaintiff was referred to Wexler Wallace by Adam Slater's officer after finding Adam's name doing research online and Googling "pelvic mesh." *Id*. at 30-31. It is unclear when Plaintiff contacted Adam Slater's office and was referred to Wexler Wallace. Plaintiff was asked, "When did you do that Googling?" to which she answered, "I couldn't tell you." *Id*. at 31.

On October 6, 2015, Plaintiff saw Dr. Sherman and expressed concern that her pelvic pain may be due to her bladder mesh. *Id*. at 145-146. Dr. Sherman testified that she examined Plaintiff and did not notice any problems with the TVT-O mesh. (Doc. 37-2 at 36-37.) At that visit, Dr. Sherman told Plaintiff that her pelvic pain was muscular in nature and not related to the mesh. *Id*. at 37. Plaintiff testified that Dr. Sherman told her, "Nothing you're experiencing should have anything to do with that." (Doc. 97-2 at 153.)

In 2016 Plaintiff saw Dr. Christian Twiss, who determined her TVT-O device had eroded into her vaginal wall. (Doc. 97-2 at 45, 154.) On March 18, 2016, Dr. Twiss performed a transvaginal excision of the TVT-O device, bilateral groin exploration for sling excision and cystourethroscopy for her urethral sling. (Doc. 37 at 1-2.)  Plaintiff testified that she did not make a connection between her symptoms and the TVT-O mesh until she saw Dr. Twiss in 2016. (Doc. 97-2 at 25, 172.) Plaintiff filed suit on May 13, 2016. (Doc. 1.)

## ii.   **Statute of Limitations and the Discovery Rule**

Arizona law requires that personal injury actions be commenced and prosecuted within two years after the cause of action accrues. *See* Ariz. Rev. Stat. §§ 12-542 and -551. "Under the 'discovery rule,' a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson*, 898 P.2d at 966 (Ariz. 1995) (quoting Calvin W. Corman, Limitations of Actions § 11.1.1 (1991)). The discovery rule is an exception to the traditional rule "that the period of limitations begins to run when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim." *Id.*

A claim does not accrue merely because a plaintiff knows of her injury and its cause. *See Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (en banc). The Arizona Supreme Court has explained, "[w]hile it is ordinarily sufficient when the plaintiff is aware of the injury and its causative agent (the 'what and who' elements), summary judgment is warranted only if the failure to go forward and investigate is not reasonably justified." *Id. Walk* further reasoned a plaintiff "could not be charged with 'a duty to file a complaint based on information she subjectively believed to be false or unbelievable at the time.'" *Id.* (quoting *Doe v. Roe*, 955 P.2d 951, 962 (Ariz. 1998)). "Thus, the 'jury must determine at what point [a] [p]laintiff's knowledge, understanding, and acceptance in the aggregate provided sufficient facts to constitute a cause of action.'" *Walk*, 44 P.3d at 996 (quoting *Doe*, 955 P.2d at 962). "We pointed out that determinations of the time when discovery occurs[,] and

1  a cause of action accrues 'are usually and necessarily questions of fact for the jury.'" *Walk*,

2  44 P.3d at 962 (quoting *Doe*, 955 P.2d at 961).

3    "In the product liability context, this means that the plaintiffs 'need[] to know that

4  the product was in some way causally connected to their injuries.'" *Murrell v. Wyeth, Inc*.,

5  No. CV 13-0290-PHX-DCG, 2013 WL 1882193, at *3 (D. Ariz. May 3, 2013) (quoting

6  *Roulston v. Foree Tire Co., Inc*., No. 88-2691, 1990 WL 35216, at *3 (9th Cir. Mar. 29,

7  1990)). *See also McGill v. Nat'l Specialty Ins. C*o., No. CV 12-01671-PHX-DGC, 2013

8  WL 331256, at *6 (D. Ariz. Jan. 29, 2013) ("Under Arizona law, 'the discovery rule tolls

9  limitations until the plaintiff possess[es] a minimum knowledge sufficient to recognize that

10  a wrong occurred and caused injury.'") (citation omitted).

11          **iii. Analysis**

12    The undisputed facts establish that Plaintiff contacted a law firm in 2012 after seeing

13  an advertisement on television and authorized that law firm to collect her medical records.

14  Plaintiff testified:

15    Q. And based on that ad in 2012, did you understand that some of the things
16    that you were experiencing were related to mesh?
  A. Could be. I didn't understand it. It was a possibility.
17    Q. Okay. So it's something that you were considering in 2012; is that right?
  A. Mm-hmm.
18    Q. That's a yes?
  A. Yes.
19
20    Q. And when we say "in 2012," is that the latter part of 2012?
  A. I don't recall.
21    Q. And as soon as you saw this attorney number, did you call it right away?
22    A. Yes. Well, it wasn't right away. I don't recall the timeline on that, but it
  wasn't like, "Oh."
23      It was – I had never thought about – I'd been in chronic pain for quite
24    a long time that they were treating with a pretty – what I considered a narcotic
  for chronic pain, which was not comfortable. And because I had a back
25    surgery, that was logical to me. I hadn't considered any other possibility, but
26    I had had the surgery in 2006.

27  (Doc. 97-2 at 27-28.) Thereafter, in 2012 or possibly early 2013, the law firm told her,

28  "Yes, you had a mesh implanted with this that could attribute to you." *Id*. at 32-33. Plaintiff

testified that she did not hire that law firm and they did not file suit on her behalf. (Doc. 97-2 at 31.)

On October 6, 2015, Plaintiff saw Dr. Sherman and expressed concern that her pelvic pain could be attributed to her TVT-O mesh. However, when Dr. Sherman examined Plaintiff Dr. Sherman did not notice any problems with the TVT-O mesh and diagnosed her with pelvic pain syndrome and referred her to physical therapy. Less than a year later, in 2016, Plaintiff saw Dr. Cristian Twiss who determined that Plaintiff's TVT-O device had eroded into her vaginal wall and recommended surgery to remove the mesh. On March 18, 2016, Dr. Twiss removed the TVT-O device. As explained below, the Court finds that there is more than one reasonable conclusion that can be drawn from these facts.

A reasonable juror could find that Plaintiff reasonably did not pursue a claim against Defendants in either 2012 or 2013 because she did not understand what the law firm told her regarding her pelvic mesh. Plaintiff testified the law firm told her, "Yes, you had a mesh implanted with this that could attribute to you." From this testimony a reasonable juror could find that this means that the law firm told Plaintiff that she had a pelvic mesh device implanted "that [the law firm] could attribute to [her]."

Plaintiff testified that she did not understand what the law firm told her and, assuming the truth of Plaintiff's testimony as the Court must, a trier of fact could determine that Plaintiff did not have the knowledge, understanding and acceptance in the aggregate that the TVT-O device was the cause of her pelvic pain and dyspareunia in 2012 or 2013. As recognized by the Arizona Supreme Court in *Walk*, a plaintiff cannot not be charged with a "duty to file a complaint based on information she subjectively believed to be false or unbelievable at the time" and "an adverse or untoward result, or a failure to achieve an expected result, is not, as a matter of law, always sufficient notice." *Walk*, 44 P.3d at 996 (quoting *Doe*, 955 P.2d at 962).

Two or three years later, in 2015, Dr. Sherman told Plaintiff that she did not believe that her pelvic pain could be attributed to her TVT-O device. Dr. Sherman testified that when she performed Plaintiff's pelvic exam in October 2015, she did not notice mesh

erosion, tight banding or "any problems" with Plaintiff's TVT-O device. (Doc. 37-2 at 37.) A reasonable juror could find that Plaintiff reasonably relied on her physician's opinion that her symptoms were not caused by the TVT-O device. Indeed, *Walk* recognized that "[w]hile failure to question consulting doctors … could be taken as a lack of diligence, … it cannot be said as a matter of law that a reasonable person in this circumstance can be required to undertake such questioning or be held accountable for not doing so." 44 P.3d at 996.

Plaintiff's visit with Dr. Sherman in October 2015 was the first time that she had seen Dr. Sherman since 2006. (Doc. 97-2 at 146-147.) The record is silent as to whether Plaintiff saw any other physician for a pelvic exam during the time period between her communications with the Cartmell law firm in 2012 or 2013 and her visit with Dr. Sherman in 2015. A reasonable juror could infer, however, that another physician would not have discovered any mesh erosion or tight banding of Plaintiff's TVT-O device because Dr. Sherman did not find any mesh erosion or tight banding in October 2015.

Finally, in 2016, Plaintiff saw Dr. Twiss who told her the TVT-O device eroded through her vaginal wall and was causing her symptoms. Plaintiff had the TVT-O device removed on March 18, 2016 and filed her short form complaint in the MDL on May 13, 2016.

The Court finds that a reasonable fact finder could conclude that Plaintiff did not have the knowledge, understanding and acceptance in the aggregate for her cause of action to accrue in 2012 or 2013, that she reasonably relied upon Dr. Sherman's 2015 opinion that her TVT-O device was not the cause of her symptoms, and her cause of action did not accrue until 2016 when she was told by Dr. Twiss that her TVT-O device eroded through her vaginal wall. If the jury finds that Plaintiff's cause of action accrued in March 2016 her lawsuit is timely.

The Court also finds that a reasonable juror could conclude that Plaintiff's knowledge, understanding and acceptance in the aggregate provided sufficient facts to constitute a cause of action against Defendants when she was told by the law firm, "Yes,

you have a mesh implanted with this that could attribute to you," in 2012 or 2013. If the jury finds Plaintiff's cause of action accrued in 2012 or 2013 and more than two years passed until Dr. Sherman told her that her pelvic mesh device was not the cause of her symptoms or the jury finds that it was not reasonable for Plaintiff to have relied on Dr. Sherman's opinion regarding the cause of her symptoms, then this action is time-barred.

In sum, the Court concludes that there is a triable issue of fact on when Plaintiff's cause of action accrued and the jury must determine at what point Plaintiff's knowledge, understanding and acceptance in the aggregate provided sufficient facts for a cause of action to accrue. Defendants' Motion for Summary Judgment on statute of limitations grounds (Count XVIII) will be denied.

### c. DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

Judge Markovich recommends denying Defendants' Supplemental Motion for Summary Judgment as moot. (Doc. 96 at 9.) Because the Court rejects the recommendation to grant summary judgment in Defendants' favor on statute of limitations grounds, the Court also rejects the recommendation to deny Defendants' Supplemental Motion for Summary Judgment as moot. Instead, as explained below, the Court will grant Defendants' Supplemental Motion for Summary Judgment.

### i. Punitive Damages Claim (Count XVII)

Defendants seek dismissal of Plaintiff's punitive damages claim arguing that a punitive damages award is barred by Arizona law. (Doc. 89.) Defendants establish that on December 8, 2003, the Food and Drug Administration ("FDA") issued a letter to Defendant Ethicon stating it had reviewed Ethicon's Section 510(K) premarket notification and found that the TVT-O mesh sling device was substantially equivalent to legally marketed predicate devices, and authorizing Ethicon to market the TVT-O in the United States. (Doc. 90 at ¶ 1.) They argue that under Arizona law a manufacturer is not liable for punitive damages if the product at issue "was designed, manufactured, packaged, labeled, sold or represented in relevant and material respects according to the terms of an approval,

1    conditional approval, clearance, license or similar determination of a government agency."

2    (Doc. 89 at 3, quoting Ariz. Rev. Stat. § 12-689.)

3        Plaintiff does not contest Defendants' argument that Ariz. Rev. Stat. § 12-689 bars

4    punitive damages in her case. Instead, she argues this Court should apply New Jersey law

5    to her punitive damages claim urging that the MDL court has "repeatedly considered

6    whether New Jersey law (where Defendants are located) or a plaintiff's individual state

7    law governs punitive damages." (Doc. 91 at 1-2.) According to Plaintiff, New Jersey law

8    "allows for punitive damages for medical devices that have been 'cleared' by the FDA,

9    when specific elements are proven." *Id*. at 6.

10                    ii.   **Plaintiff Admits Arizona Law Applies**

11        Plaintiff admitted Arizona law applies to her claims in her opposition to Defendants'

12    Motion for Summary Judgment. (Doc. 37 at 2 n.4.) Judge Markovich noted Plaintiff's

13    admission in his R & R. (Doc. 96 at 4 n.1.) Plaintiff did not object to Judge Markovich's

14    acknowledgement of her admission. (Doc. 97.) The Court finds Plaintiff has waived[8] any

15    argument that Arizona law does not apply to her punitive damages claim.

16        Notwithstanding Plaintiff's admission, as explained below, the Court finds that

17    Arizona law applies to Plaintiff's punitive damages claim.

18                iii.   **Arizona Law Applies Notwithstanding Plaintiff's Admission**

19        In a direct-filed case,[9] the choice of law that applies is the place where the plaintiff

20    was implanted with the product. *McBroom v. Ethicon, Inc*., No. CV 20-02127-PHX-DCG,

21    2021 WL 824411, at *1 n.2 (D. Ariz. Mar. 4, 2021) (citing *In re Ethicon, Inc*., No. 2:12-

22    MD-02327, 2014 WL 346717, at *7 (S.D. W.Va. Jan. 30, 2014)). "Arizona has adopted

---

[8] "Failure to object to a magistrate judge's recommendation waives all objections to the magistrate judge's findings of fact." *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998*), as amended on denial of reh'g* (Nov. 24, 1998) (citing *Smith v. Frank*, 923 F.2d 139, 141 (9th Cir.1991); *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)). "A failure to object to a magistrate judge's legal conclusion 'is a factor to be weighed in considering the propriety of finding waiver of an issue on appeal.'" *Walker v. Walker*, No. CV-21-00901-PHX-CDB, 2021 WL 2646637, at *1 (D. Ariz. June 28, 2021) (quoting *Turner v. Duncan*, 158 F.3d 449, 465 (9th Cir. 1998)).

[9] A case that originates elsewhere but is directly filed in the MDL is a "direct-filed" case. *See Bellew v. Ethicon, Inc*., No. 2:23-CV-22473, 2014 WL 6913836, at *2 (S.D. W.Va. Nov. 24, 2014).

the RESTATEMENT (Second) of Conflict of Laws (1971) to resolve conflict of laws issues." *Ochoa-Valenzuela v. Ford Motor Co.*, No. 10-CV-156-TUC-RCC, 2013 WL 11826545, at *2 (D. Ariz. Aug. 23, 2013) (citing *Schwartz v. Schwartz*, 447 P.2d 254 (1968), *overruled on other grounds*, *Bryant v. Silverman*, 703 P.2d 1190, 1191 (Ariz. 1985)). Plaintiff was implanted with the TVT-O in Arizona and Arizona law applies to Plaintiff's punitive damages claim unless another state has a more significant relationship to the occurrence and the parties. *See Ochoa-Valenzuela*, 2012 WL 11826545, at *2.

In determining whether another state has a stronger interest, this Court considers: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* (citing RESTATEMENT (Second) Conflict of Laws § 145). Plaintiff argues that New Jersey has a stronger interest than Arizona and New Jersey's law on punitive damages should apply. (Doc. 91.) As explained below, this Court disagrees.

1.  Place Where the Injury Occurred

Plaintiff was implanted with the TVT-O device and underwent surgery to remove it in Arizona. Plaintiff argues that this factor should carry little weight because it is fortuitous that she received the device, i.e., was injured, in Arizona. (Doc. 91 at 9-10.) The Court disagrees.

Plaintiff is a resident of Arizona and it is entirely foreseeable that she would receive medical treatment—such as an implant in an effort to alleviate her health issues—in Arizona with products marketed to Arizona residents. The Court is unpersuaded by case law, involving airplane crashes, on which Plaintiff relies. *Id*. In the case of an airplane crash, the location of the crash is entirely fortuitous. In *Bryant v. Silverman,* the Arizona Supreme Court held:

> As to punitive damages, in airplane crash cases the place of injury is much more fortuitous than the place defendant selects as his place of incorporation and principal place of business or the place of misconduct. Thus, the state where an injury occurs has less interest in deterrence and less ability to control

- 12 -

1
2
3
4

> behavior by deterrence or punishment than the state where the defendant airline is domiciled or the state where the misconduct occurred. *In re Air Crash Near Chicago*, 644 F.2d at 615 (7th Cir.1981); *Cousins v. Instrument Flyers, Inc*., 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978). Thus, the place of injury carries little weight in our selection of the applicable state law on punitive damages.

5
6
7
8

703 P.2d at 1194. *See also, Garcia v. GMC*, 990 P.2d 1069, 1076 (Ariz. Ct. App. Div. 1 1999) (a state is fortuitous when an injury "just happen[s] to occur there"). It is not fortuitous that Plaintiff was injured in Arizona. Plaintiff lives in Arizona and she was predictably implanted in Arizona with the TVT-O device.

9
10

This factor favors of the application of Arizona law to the punitive damages claim.

2.   Domicile of the Parties/Place Where Conduct Occurred

11
12
13
14
15
16

Plaintiff is an Arizona resident and Defendants are domiciled in New Jersey. Plaintiff alleges that the conduct causing her injury—conduct related to the design, marketing, and warning of the TVT-O device—took place in New Jersey. She argues this factor favors application of New Jersey punitive damages law. (Doc. 91 at 8.) She argues the MDL court has noted that, "the focus of the punitive damages inquiry is corporate conduct, and that conduct allegedly occurred in New Jersey." *Id*. at 9.

17
18
19
20
21

However, as recognized by District Judge Raner Collins in *Ochoa-Valenzuela*, "although [the defendant corporation] is domiciled in Michigan, it has availed itself to the jurisdiction by making is products available in Arizona and doing business in this state." 2013 WL 11826545, at *3. Similarly here, Defendants availed themselves of Arizona and its laws by making their pelvic mesh devices available to Arizona residents.

22
23

The Court finds the domicile of the parties and the place where the injury causing conduct occurred favors the application of both Arizona and New Jersey law.

3.   Where the Parties' Relationship is Centered

24
25
26
27

The relationship between the parties exists only because Defendants made the TVT-O device available to Arizona residents and Plaintiff was implanted with the device in Arizona.

28

This factor favors the application of Arizona law.

- 13 -

4.  RESTATEMENT (Second) Conflict of Laws §6 Factors

Once this Court considers the §145 contact factors, it must apply the factors listed in §6 of the RESTATEMENT (Second) Conflicts of Laws: (1) the needs of the interested state and international systems; (2) the relevant policies of the forum states; (3) the relevant policies of other interested states; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *See Ochoa-Valenzuela*, 2013 WL 11826545, at *3 (citing RESTATEMENT (Second) Conflict of Laws §6).

On the first factor, the needs of interstate and international legal systems are unaffected by application of either state's law. The Court finds the first factor favors neither Arizona nor New Jersey.

On the second and fifth factors, Plaintiff points out that New Jersey has an interest in punishing its corporate domiciliaries for misconduct. (Doc. 91 at 10-11.) It is also true, however, that Arizona has a policy favoring the use of punitive damages to punish wrongful acts by foreign corporations. And it is also the case, as pointed out by Defendants, that the Arizona legislature exacted Ariz. Rev. Stat. § 12-689 thereby demonstrating an intent that a manufacturer of a product cleared by a government agency should not be subject to punitive damages in product liability actions under Arizona law based on that product.[10] (Doc. 94 at 5.) It appears that if the Court were to apply Plaintiff's interpretation of the choice-of-law analysis, then § 12-689 would only apply to medical devices manufactured in Arizona thus limiting the application of § 12-689 to only a subset of products liability cases. Plaintiff has offered no argument that the Arizona legislature intended that § 12-689 be so limited. Given that Plaintiff is an Arizona resident, predictably received healthcare in Arizona, and predictably received a product that was marketed to her as an Arizona resident, the Court finds that Arizona's interest outweighs New Jersey's interest in punishing its corporate domiciliaries.

---

[10] Except in the circumstances permitted by Ariz. Rev. Stat. § 12-689(B).

1  The parties have not argued that the third factor, the policies of other interested

2  states, applies in this case.

3  The fourth and sixth factors, the protection of justified expectations and the interest

4  in certainty, predictability, and uniformity of result, favor the application of Arizona law.

5  For example, *Bailey v. Ethicon, Inc.*, a direct-filed MDL pelvic mesh case recently decided

6  by District Judge James Soto, applied[11] Arizona law to Plaintiff's claim for punitive

7  damages. *See Bailey v. Ethicon, Inc.*, No. CV-20-00457-TUC-JAS (LCK), 2021 WL

8  4190625 (D. Ariz. Sept. 15, 2021) (adopting in full the report and recommendation (Doc.

9  131) of Magistrate Judge Lynette C. Kimmins). Other district courts in this district have

10  also applied Arizona law to a plaintiff's claim for punitive damages in product liability

11  cases like this one. *See*, *e.g.*, *Baca v. Johnson & Johnson*, No. CV-20-01036, 2020 WL

12  6450294 at *6 (D. Ariz. Nov. 2, 2020) (direct-filed MDL pelvic mesh case, District Judge

13  Diane J. Humetewa held Ariz. Rev. Stat. § 12-689 barred punitive damages claim); *Hix v.*

14  *Bos. Sci. Corp.*, No. CV-19-00422-PHX-DJH, 2019 WL 6003456, at *8 (D. Ariz. Nov. 14,

15  2019 (same); *Taylor,* 2020 WL 4592923 (same). In light of the foregoing, this Court finds

16  that certainty, predictability, and uniformity, as well as the protection of the parties'

17  justified expectations, are favored by the application of Arizona law to Plaintiff's punitive

18  damages claim.

19  Plaintiff's reliance on *Bellew v. Ethicon, Inc.*, No, 2:13-CV-22473, 2014 WL

20  6674433, at *2 (S.D. W.Va. Nov. 24, 2014), does not persuade this Court otherwise. In that

21  MDL case, District Judge Goodwin held that New Jersey law applied to the plaintiff

22  Arizona resident's punitive damages claim. However, District Judge Goodwin's decision

23  relied upon *Bryant*, *supra*, an airplane crash case. This Court has already determined that

24  airplane crash cases are distinguishable because the crash location is fortuitous. Here, in

25  contrast, it is not fortuitous that Plaintiff, an Arizona resident, was implanted with the TVT-

26  O device in Arizona. Also, in *Bellew*, the plaintiff "implicitly" accepted that New Jersey

27  law applied to her punitive damages claim and the only RESTATEMENT factor that District

28

---

[11] In *Bailey*, Judge Soto held there was a question of fact as to when the plaintiff's cause of action vested for purposes of applying Ariz. Rev. Stat. § 12-689.

Judge Goodwin examined was "the location where the conduct took place." 2014 WL 6674433, at *2. The Court is not persuaded by *Bellew*.

The Court also finds unpersuasive the other cases Plaintiff relies upon because the plaintiff in those cases either admitted or did not dispute that New Jersey law applied to the punitive damages claim. *See Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1020 (7th Cir. 2020) ("the parties agree that New Jersey law applies to the [issue of punitive damages]."); *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 741 (S.D. W.Va. Jan. 15, 2014) (recognizing that the defendants argued that New Jersey law applied and the plaintiffs "appeared to assume that it does"); *Hammons v. Ethicon, Inc*, 190 A.3d 1248, 1287 (Pa. Super. Ct. 2018) ("Prior to trial, the parties agreed that New Jersey law governed the issue of punitive damages."). *Salinero v. Johnson & Johnson*, 408 F. Supp. 3d 1354, 1357-58 (S. D. Fla. 2019), is not persuasive because the court in that case based its decision that New Jersey law applied on the fact that Ethicon's principal place of business was there and did not consider any of the other relevant RESTATEMENT factors.

The Court finds that the seventh factor, ease in the determination and application of the law to be applied, favors neither Arizona nor New Jersey.

In sum, the Court determines that the balance of the applicable RESTATEMENT factors tips in favor of the application of Arizona law to Plaintiff's punitive damages claim.

### iv.   **Arizona Law Bars a Punitive Damages Award**

The FDA issued a letter to Ethicon stating it reviewed its Section 510(K) premarket notification and found that the TVT-O mesh sling device was substantially equivalent to legally marketed predicate devices, and authorizing Ethicon to market the TVT-O in the United States. Under Arizona law, a manufacturer is not liable for punitive damages if the product at issue "was designed, manufactured, packaged, labeled, sold or represented in relevant and material respects according to the terms of an approval, conditional approval, clearance, license or similar determination of a government agency." *See* Ariz. Rev. Stat. § 12-689(A)(1).[12] Other courts in this district have held that § 12-689(A) bars a claim for

---

[12] The statute contains four exceptions. *See* Ariz. Rev. Stat. § 12-689(B)(1)-(4). The parties agree that none of the exceptions apply in this case.

punitive damages where the FDA cleared a medical device. *See Baca*, 2020 WL 6450294, at *6 (dismissing punitive damages claim when the TVT device had received FDA clearance and rejecting claim that a statutory exemption applied); *Casey v. Wright Med. Tech., Inc*., No. CV-19-05360-PHX-NVW, 2020 WL 736306, at *7 (D. Ariz. Feb. 13, 2020) (dismissing punitive damages claim where plaintiff conceded the FDA cleared the medical device and failed to cite any facts suggesting one of the four statutory exceptions applied); *Taylor,* 2020 WL 4592923, at *4-5 (dismissing claim for punitive damages where plaintiff admitted product was cleared by the FDA but failed to allege facts sufficient to establish a claim that one of the four statutory exceptions applied); *Hix*, 2019 WL 6003456, at *8 (same). *See also*, *Craten v. Foster Poultry Farms Inc*., No. CV-15-02587-PHX-DLR, 2018 WL 834937, at *4 (D. Ariz. Feb. 13, 2018) ("In Arizona, punitive damages are awarded only in the most egregious cases … [and] [i]n enacting § 12-689, Arizona made clear that a manufacturer's conduct does not rise to this level of egregiousness when the product alleged to have caused harm was approved for sale by a government agency.").

There is no dispute that the FDA cleared Defendants' TVT-O device to be marketed in the United States. Arizona law bars a claim for punitive damages where the product at issue was designed, manufactured, packaged, labeled, sold, or represented in relevant and material respects according to the terms of an approval, conditional approval, clearance, license, or similar determination of a government agency. This Court finds that Ariz. Rev. Stat. § 12-689 bars Plaintiff's punitive damages claim.

Defendants' Supplemental Motion for Summary Judgment will be granted.

## IV.    REMAINING CLAIMS IN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment on Plaintiff's Strict Liability—Failure to Warn Claim (Count III), and her negligence-based claims (Counts I, X and XIV).[13]

…

…

---

[13] As noted above, Defendants' motion does not address Plaintiff's Strict Liability—Design Defect claim (Count V). (Doc. 29.)

### a.  Strict Liability—Failure to Warn (Count III)

#### i.  Facts

Plaintiff relied on Dr. Sherman in deciding to have the TVT-O device implanted. (Doc. 97-2 at 22.) She did not rely on any Ethicon patient brochure in making her decision. *Id*.

Dr. Sherman testified that she had very good experience with the TVT-O and found it to be an effective procedure for her patients. (Doc. 37-2 at 22, 92.) She testified that she did not read the TVT-O's instructions for use ("IFU") when she was first learning to use the product and she would have read the IFU for the first-time during Ethicon-sponsored training on the TVT-O in 2005. *Id*. at 42. She does not remember the last time she read the IFU, she did not read it in the operating room immediately before performing the procedure, and she does not recall using it during her risk benefit discussion with Plaintiff. *Id*. at 42, 44, 58-59, 65-66. Dr. Sherman relied on her knowledge, medical literature, and her colleagues in making her decision to recommend the TVT-O device to Plaintiff. She believes that she was adequately informed about the risks and propensities of the TVT-O at the time she performed Plaintiff's surgery. *Id*. at 94-95.

At the time of Plaintiff's surgery in 2006, Dr. Sherman was aware that the surgery had the potential to cause acute and/or chronic pain, including pain with intercourse, pelvic pain, vaginal scarring, infection, urinary problems including frequency, urgency, dysuria, retention, obstruction, and incontinence, organ or nerve damage, bleeding, wound complications, inflammation, fistula formation, neuromuscular problems, additional surgeries, recurrence of stress urinary incontinence or failure, foreign body response, explosion, exposure or extrusion, contraction or shrinkage of tissues, and that these risks could be temporary or chronic, mild, moderate, or severe. *Id*. at 28-30.

Dr. Sherman also testified that if she had been provided with information from Ethicon about how the inventor of the TVT-O was convinced that the foreign body reaction led to pain, this information would possibly have affected her decision in recommending the TVT-O to Plaintiff. *Id*. at 81-82. She testified that the TVT-O's 2006 IFU did not

contain information about how the mesh could cause chronic inflammation, or rope or curl after implantation, or lose particles and fray, and that if it had, that information possibly would have impacted her decision to offer the TVT-O as an option to Plaintiff. (Doc. 37-2 at 82-83.) If Ethicon had made her aware that chronic dyspareunia was a complication of TVT-O in 2006, that would have been information Dr. Sherman would have passed along to Plaintiff. *Id.* at 73-74.

### ii. <u>Failure to Warn</u>

Arizona recognizes three types of defects in strict products liability actions: manufacturing defects, design defects, and informational defects in instructions and warnings. *McBroom,* 2021 WL 824411, at *2 (quoting *Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1051 (D. Ariz. 2003)). "To establish a failure to warn claim, the plaintiff must show, among other things, that the defendant had a duty to warn." *McBroom*, 2021 WL 824411, at *2 (citing *Sw. Pet Prods., Inc*., 273 F. Supp. 2d at 1051). "Manufacturers generally have a duty to warn consumers of foreseeable risks of harm from using their products." *McBroom*, 2021 WL 824411, at *2 (citing *Watts v. Medicis Pharms. Corp.*, 365 P.3d 944, 949 (Ariz. 2016)).

In cases involving medical devices, however, Arizona applies the "learned intermediary" doctrine. *McBroom*, 2021 WL 824411, at *2 (citing *Watts*, 365 P.3d at 949; *Conklin v. Medtronic, Inc.*, 431 P.3d 571, 577 (Ariz. 2018) ("*Watts* adopted the RESTATEMENT (Third) of Torts provision [in §6(d)] that sets forth the [doctrine] for prescription drug and medical device manufacturers."); *Paseka*, 2020 WL 8175427, at *3 ("There is no doubt that the [doctrine] applies to medical device manufacturers like Defendants.") (citing *Conklin*, 431 P.3d at 577-78); *Baca,* 2020 WL 6450294, at *3 ("This case involves a medical device sold by a manufacturer to a health-care provider for use by a patient, and the Court, therefore, finds that the learned intermediary doctrine applies.")). (footnote omitted).

Under the learned intermediary doctrine, "a manufacturer satisfies its duty to warn end users by giving appropriate warnings to the specialized class of [intermediaries] who

may prescribe or administer the product." *McBroom*, 2021 WL 824411, at *2 (citing *Conklin*, 431 P.3d at 577)). "[T]he intermediary (often a treating physician) 'assumes the duty to pass the necessary warnings on to the end users.'" *McBroom*, 2021 WL 824411, at *2 (citing *Conklin*, 431 P.3d at 577).

To establish proximate cause in a failure to warn claim, the plaintiff "must submit evidence that the medical outcome would have been different had the manufacturer provided different warnings to the physician." *McBroom*, 2021 WL 824411, at *3 (quoting *Paseka*, 2020 WL 8175427, at *4) (citing *D'Agnese v. Novartis Pharms. Corp*., 952 F. Supp. 2d 880, 891 (D. Ariz. 2013)). "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *McBroom*, 2021 WL 824411, at *3 (quoting *Paseka*, 2020 WL 8175427, at *4)). *See also Murrell*, 2013 WL 1882193, at *6 ("To establish proximate cause on a failure to warn claim under Arizona law, a plaintiff 'needs to show that had a proper warning been given, the injury would not have happened.'"). (citations omitted).

### iii.  **Analysis**

Defendants argue that Plaintiff cannot establish causation on her Strict Liability—Failure to Warn claim for three reasons. (Doc. 30 at 7-9.) They argue Plaintiff cannot establish causation because Dr. Sherman did not rely on the TVT-O's IFU. *Id*. at 8-9. They argue she cannot establish causation because Dr. Sherman knew the risks of the TVT-O and still recommended the device. *Id*. at 7-8. Lastly, they argue Dr. Sherman stands by her decision and, as a result, Plaintiff cannot establish that the injury would not have happened if a proper warning was given. *Id*. at 9.

1.  Dr. Sherman's Reliance on the IFU

Dr. Sherman testified that she reviewed the IFU during her training on the device. (Doc. 37-2 at 42.) She generally reviewed the risks of the TVT-O procedure with Plaintiff during her informed consent discussion with her. *Id*. at 44. She testified that her review of the risks of the TVT-O would have been along the lines of risk of injury to bowel, bladder,

1   pain issues, injury to nerves, retention, the risk of failure, etc. *Id*. at 44-45. She partly relied

2   on Ethicon to present the risks of the TVT-O device truthfully, accurately, completely, and

3   reliably, in obtaining informed consent of her patients, including Plaintiff. She could not

4   recall her exact informed consent discussion with Plaintiff. *Id*. at 53-54, 57-59.

5       In support of their argument that Dr. Sherman did not rely on the IFU in

6   recommending the TVT-O to Plaintiff, Defendants rely upon three cases in which it was

7   undisputed that those physicians never read the manufacturer's warning label and, as a

8   result, the plaintiff's failure to warn claim failed for lack of causation. (Doc. 30 at 8.) *See*

9   *Gebhardt v. Mentor Corp*., 15 Fed. App'x 540, 542 (9th Cir. 2001) (doctor never reviewed

10  the medical device's warning label); *Carter v. APP Pharm., LLC*, No. CV-10-02573-PHX-

11  ROS, 2013 WL 5532767, at *7 (D. Ariz. Aug. 13, 2013) (multiple physicians testified they

12  had never reviewed the company's medication label); *In re C.R. Bard, Inc*., No. 2:11-CV-

13  00114, 2013 WL 2949033, at *3 (S.D.W. Va. June 14, 2013) (applying Mississippi law

14  and finding no proximate cause because the doctor never read the manufacturer's warning).

15      In *Bailey v. Ethicon, Inc*., 2021 WL 4190265, District Judge Soto adopted in full

16  Magistrate Judge Lynnette C. Kimmins's report and recommendation distinguishing

17  *Gebhardt, Carter and In re C.R. Bard, Inc.,* and rejecting Ethicon's argument that the

18  physician did not rely on the Prolift +M's IFU where the physician testified that he read

19  the Prolift +M's IFU even though he could not recall if he relied upon the IFU in

20  recommending the device to the plaintiff. The physician in *Bailey* testified he relied on the

21  adverse risk information from the IFU in obtaining the plaintiff's informed consent. As in

22  *Bailey*, this Court finds that cases relied upon by Ethicon are distinguishable from the

23  instant case. Dr. Sherman testified that she read the IFU in 2005 before obtaining Plaintiff's

24  informed consent. A jury could find that Dr. Sherman at least partially relied upon the

25  adverse risk information contained in the IFU in obtaining Plaintiff's informed consent.

26                  2.   Dr. Sherman's Knowledge of the TVT-O's Risks

27      Dr. Sherman testified to knowing a number of risks of implanting the TVT-O

28  device. She testified to being aware that the TVT-O device carried the risks of causing

acute and/or chronic pain, including pain with intercourse, pelvic pain, vaginal scarring, infection, urinary problems including frequency, urgency, dysuria, retention, obstruction, and incontinence, recurrence of stress urinary incontinence or failure, foreign body response, and that these risks could be temporary or chronic, mild, moderate, or severe.

Plaintiff argues that while this is true, Dr. Sherman also testified to not knowing about other risks of the TVT-O device and that if she had known of these other risks, such knowledge possibly would have altered her recommendation to Plaintiff. *See, e.g.,* Doc. 37-2 at 79 (testimony by Dr. Sherman that if she would have known that the prolene in the mesh was shown to crack and degrade it would "possibly" have affected her decision on whether to recommend the use of the TVT-O mesh to Plaintiff); *Id*. at 79-80 (same with respect to knowledge that Ethicon identified a degradation hazard); *Id*. at 80-81 (same with respect to knowledge that the plastics in the TVT-O were incompatible with strong oxidizers, such as peroxides that are naturally present in the vagina); *Id*. at 81 (same with respect to knowledge that Ethicon's medical director concluded that the obturator approach and the vicinity of the nerve branches of the obturator of the taped trajectory will induce pain and will be responsible for some chronic pain syndromes); *Id*. at 81-82 (same with respect to knowledge that the inventor of the TVT-O "is convinced" that the foreign body reaction of the mesh in the trajectory outside of the obturator membrane plays a role in the development of pain); Doc. 37-2 at 82-84 (same with respect to knowledge that the TVT-O could cause chronic foreign body reactions, that it could shrink or contract inside of the body, that it could rope or curl in the body causing injury, that it could fray or lose particles in the body and that pores of the TVT-O mesh could collapse under tension). *See also* Doc. 37-2 at 62-64 (testimony by Dr. Sherman that had she known the manufacturer had not adequately studied its product she "not necessarily" would have made the recommendation to Plaintiff but that it "potentially" could have "altered the conversation" she had with her).

Significantly, however, Dr. Sherman testified that it was "possible" that it could have impacted her decision to recommend the TVT-O if had she known of additional alleged risks mentioned above and pointed out by Plaintiff. Theoretical possibility that a

warning about increased risks may have influenced a physician's informed consent process or her decision to use a defendant's device is not sufficient to create a triable issue on causation. *See McBroom*, 2021 WL 824411, at \*3-4 (decision by District Judge David G. Campbell holding the plaintiff could not establish causation on her failure to warn claim where physician did not testify that he would have shared warnings about increased risks with the plaintiff or that the warnings would have altered his decision to implant the Prolift and TVT Secure devices) (citing *Hanson v. Bos. Sci. Corp.*, No. 2:13-CV-10653, 2016 WL 1448868, at \*5 (S.D. W.Va. Apr. 12, 2016) (causation evidence was insufficient where it "require[d] a reasonable juror to speculate, based only on mere <u>possibility</u>, that [the doctor] would have altered her decision to prescribe the product simply because she would have considered an additional factor in her risk/benefit calculus") (underlying added)). *See also*, *In re Bard IVC Filters Prods. Liab. Litig.*, No. CV-16-00893-PHX-DGC, 2018 WL 3586404, at \*9 (D. Ariz. July 26, 2018) ("Plaintiffs argue at length that Bard's warnings for the G2X were inadequate but present no evidence ... from which a reasonable inference can be drawn that an adequate warning would have altered Dr. Henry's decision to use a G2X filter.")

Dr. Sherman's testimony in this case stands in contrast to physician testimony in cases where courts have found a genuine issue of material fact for trial on causation. *See, e.g., Bailey, supra,* CV-20-00457-TUC-JAS (LCK) at Doc. 131 at 7, report and recommendation adopted in full, 2021 WL 4190625 (report and recommendation finding where physicians testified that if they had been warned about the frequency of certain possible outcomes, they would have chosen <u>not</u> to use the Prolift +M for the plaintiff).

Plaintiff summarily argues that under Arizona law she is entitled to a "heeding presumption" and, as a result, she is "relieve[d]" of her burden of proving that Dr. Sherman would have acted differently under different, allegedly adequate, warnings. (Doc. 37 at 12.) Under the heeding presumption, a court presumes that warnings, if given, will be heeded, and followed by the learned intermediary, here Dr. Sherman. *See Golonka v. Gen. Motors, Corp.*, 65 P.3d 956, 590-91 (Ariz. Ct. App. Div. 1 2003). *See also, Oester v. Wright Med.*

*Tech., Inc.*, No. CV-19-04763-PHX-SPL, 2021 WL 3742439, at *6 (D. Ariz. Aug. 24, 2021) ("In strict liability failure to warn cases, Arizona law has a heeding presumption that allows 'the fact-finder to presume that the person injured by product use would have heeded an adequate warning, if given.'" quoting *Golonka*). "Applying this presumption 'relieves the plaintiff of her burden' of proving that her prescribing physician would have acted differently under adequate warnings." *Huskey v. Ethicon, Inc.*, No. 2:12-CV-05201, 2015 WL 4944339, at *8 (S.D. W. Va. 2015) (citation omitted). "The presumption works both ways: It works in favor of the seller when an adequate warning is given but favors the plaintiff when an adequate warning is not given." *Dole Food Co., Inc. v. No. Carolina Foam, Indus., Inc.*, 935 P.2d 876, 883 (Ariz. Ct. App. 1996).

While Arizona law entitles Plaintiff to a heeding presumption, Defendants have rebutted the presumption because no reasonable juror could find from Dr. Sherman's testimony that she would have heeded a warning about additional alleged risks. "[T]he presumption is rebuttable, meaning 'if the manufacturer introduces evidence that would permit reasonable minds to conclude that the injured party would not have heeded an adequate warning' the presumption is destroyed 'and the existence or non-existence of the presumed fact must be determined as if the presumption had never operated in the case.'" *Oester*, 2021 WL 3742439, at *6 (quoting *D'Agnese*, 952 F. Supp. 2d at 890-91). *See McBroom*, 2021 WL 824411, at *4 n.8 (citing *Golonka*, 65 P.3d at 968-69); *Paseka*, 2020 WL 8175427, at *5 (the heeding presumption "shifts the burden of production, but not the burden of persuasion")). Dr. Sherman testified that additional warnings "possibly" may have affected her informed consent discussion with Plaintiff and Plaintiff has failed to present any countering evidence to create a triable issue on whether additional warnings would have caused Dr. Sherman to make a different recommendation.

Plaintiff has failed to present sufficient evidence to establish a genuine issue of material fact on whether Dr. Sherman would have recommended the TVT-O knowing all of its alleged risks and summary judgment on Plaintiff's failure to warn claim is appropriate. *See McBroom*, 2021 WL 824411, at *5 (granting summary judgment on failure

to warn claim where plaintiff presented no evidence that physician would have acted differently in the face of different warnings thus failing to create a triable issue on causation); *Gebhardt v. Mentor Corp*., 191 F.R.D. 180, 184-85 (D. Ariz. 1999) (granting summary judgment on a failure to warn claim where the plaintiff failed to show that her doctor would not have used a medical device if alternative warnings had been given).[14]

Defendants are entitled to summary judgment on Plaintiff's Strict Liability—Failure to Warn Claim.

### b. Negligence (Count I), Negligent Infliction of Emotional Distress (Count X), Gross Negligence (Count XIV)

Defendants argue Plaintiff's negligence claims are duplicative of her Strict Liability—Failure to Warn claim and, as a result, they are entitled to summary judgment on the negligence claims. (Doc. 30 at 10-11; Doc. 38 at 7.) They also argue Plaintiff cannot establish the "higher burdens of proof for negligent infliction of emotional distress or gross negligence, which require proof of extreme and outrageous conduct." (Doc. 30 at 11.)

Plaintiff argues she should be able to proceed under both strict liability and negligence theories. (Doc. 37 at 8 n.7.) She also argues that she does not need to establish Defendants' conduct was extreme and outrageous for her negligent infliction of emotional distress ("NIED") claim. She also argues that she can establish that Ethicon's conduct was grossly negligent sufficient to create a jury question on her gross negligence claim. *Id*.

As explained below, the Court finds that Defendants are entitled to summary judgment on Plaintiff's negligence claims that are based on a failure to warn; Defendants are not entitled to summary judgment on Plaintiff's negligence claims to the extent they are based on negligent design. Defendants did not move for summary judgment on (and

---

[14] Having found that there is no genuine issue of material fact for trial on whether additional alleged warnings would have caused Dr. Sherman to act differently, the Court does not reach Defendants' argument that Plaintiff cannot establish causation because Dr. Sherman stands by her decision. The Court notes, however, that Dr. Sherman testified she believes, based on the knowledge that she has today, that the TVT-O was a safe and effective treatment for Plaintiff in 2006. (Doc. 37-2 at 95.)

therefore have not established the absence of a genuine issue of material fact for trial on) Plaintiff's Strict Liability—Design Defect claim (Count V). Plaintiff's negligence claims will be allowed proceed to the extent they are based on an allegedly negligent design.

### i. <u>Negligence (Count I)</u>

In Arizona, a plaintiff must show that the defective condition is the proximate cause of her injury "under negligence or strict liability." *McBroom*, 2021 WL 824411, at *5 (quoting *Paseka*, 2020 WL 8175427, at *4). Summary judgment will be granted on Plaintiff's negligence claim (Count I) to the extent it is based on an alleged failure to warn, for the reasons stated above. Defendant does not seek summary judgment on Plaintiff's Strict Liability—Design Defect claim and summary judgment on Plaintiff's negligence claim will be denied to the extent it is based on an alleged negligent design.

### ii. <u>NIED (Count X)</u>

Defendants argue they are entitled to summary judgment on Plaintiff's NIED claim because she cannot establish that Defendants' conduct was extreme and outrageous. (Doc. 30 at 11.) A claim for NEID requires proof that a defendant's conduct caused the plaintiff to suffer emotional distress that manifested itself as physical injury from either witnessing an injury to a closely related person or suffering a threat to her own personal security. *See Keck v. Jackson*, 593 P.2d 668, 669–70 (1979) (en banc). *See also Castillo v. Cty. of Tempe*, No. CV-12-02225-PHX-ROS, 2014 WL 11505911, at *6 (D. Ariz. Sept. 18, 2014) (discussing torts of intentional infliction of emotional distress and negligent infliction of emotional distress). Extreme and outrageous conduct is not an element of an NIED claim.

Defendant's request for summary judgment on Plaintiff's NIED claim will be granted only to the extent this claim is based on an alleged negligent failure to warn; Defendant's request for summary judgment on this claim is otherwise denied.

### iii. <u>Gross Negligence (Count XIV)</u>

Defendants argue they are entitled to summary judgment on Plaintiff's gross negligence claim because she cannot establish that their conduct was extreme and outrageous. (Doc. 30 at 11.) "A gross negligence claim […] require[s] proof that [a

defendant] acted knowing or with reason to know its actions created 'an unreasonable risk of bodily harm' with a high probability that such harm would result." *Jaffe v. JP Morgan Chase & Co.*, No. 1 CA-CV 12-0512, 2013 WL 2389825, at *3 (Ariz. Ct. App. May 28, 2013) (quoting *Walls v. Ariz. Dep't of Pub. Safety*, 826 P.2d 1217, 1221 (Ariz. Ct. App. Div. 1 1991)). "A party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls*, 826 P.2d at 1221 (citing *Nichols v. Baker*, 101 Ariz. 151, 153, 416 P.2d 584, 586 (1966)). "Gross negligence differs from ordinary negligence in quality and not degree." *Walls*, 826 P.2d at 1221 (citing  *Kemp v. Pinal Cnty.*, 474 P.2d 840, 843 (1970)). The Arizona Supreme Court describes gross or wanton negligence as follows:

> Wanton negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is 'in the air,' so to speak. It is flagrant and evinces a lawless and destructive spirit.

*Walls*, 826 P.2d 1221 (quoting *Scott v. Scott*,  252 P.2d 571 575 (Ariz. 1953)).

Plaintiff argues Ethicon has created a product made from a material that is not intended to be placed in the human body, which has injured hundreds of thousands of women. (Doc. 37 at 8 n.7.) Plaintiff's expert, Bruce Rosenzweig, M.D., opines that Ethicon knew that the old construction mechanically cut mesh (Prolene) was not appropriate for use in its TVT-O device but failed to modify or change the mechanically cut mush to a larger pore, lighter weight mesh that would not deform, fray, lose particles, rope curl, degrade, cause excessive foreign body reactions, and cause excessive shrinkage/contraction. (Doc. 37-3 at 21 ¶ 2.) Dr. Rosenzweig opines that, according to internal documents, Ethicon was unwilling to change the TVT-O's mesh because of its economic interest in maintaining its advantage in the market thus putting its profits before patient safety. *Id*. He opines that Ethicon knew since the launch of its TVT-O device that the mesh can be difficult to remove, is susceptible to degradation, can rope, curl, deform, fray, and lose particles, and is heavy weight mesh but Ethicon failed to complete a proper

risk analysis of these hazards. *Id*. at 22 ¶ 10. Defendants did not dispute the foregoing and argues Plaintiff's negligence claims are duplicative of her failure to warn claims. (Doc. 38.)

Drawing all reasonable inferences in Plaintiff's favor, the Court finds there is a genuine issue of material fact on Plaintiff's gross negligence claim to the extent it is based on an alleged negligent design. Plaintiff's gross negligence claim based on an alleged failure to warn will be dismissed for her inability to establish causation, as explained above.

### c. Strict Liability—Design Defect (Count V)

As Defendants' motion did not address Count V and this claim remains.

## V.    CONCLUSION

Judgment in Defendants' favor on the Withdrawn Claims (Counts II, IV, VI, VII, VIII, IX, XI, XII, XIII and XV) will be granted. There is a genuine issue of material fact on the issue of when Plaintiff's cause of action accrued, and Defendants' Motion for Summary Judgment on Discovery Rule and Tolling (Count XVIII) will be denied. Defendants' request for summary judgment on Strict Liability—Failure to Warn (Count III) will be granted as will their request for summary judgment on the negligence claims (Counts I, X, XIV) but only to the extent the negligence claims are based on a failure to warn. Defendants' Supplemental Motion for Summary Judgment will be granted, and the punitive damages claim (Count XVII) will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED WITHDRAWING** the reference to the Magistrate Judge.

**IT IS FURTHER ORDERED ACCEPTING IN PART AND REJECTING IN PART** Judge Markovich's R & R (Doc. 96) as explained herein.

**IT IS FURTHER ORDERED GRANTING IN PART AND DENYING IN PART** Defendants' Motion for Summary Judgment (Doc. 29). Defendant's Motion for Summary Judgment is **GRANTED** on Counts II, III, IV, VI, VII, VIII, IX, XI, XII, XIII and XV and the portion of Counts I, X and XIV based on negligent failure to warn, and is

otherwise **DENIED**. Counts II, III, IV, VI, VII, VIII, IX, XI, XII, XIII and XV and the portion of Counts I, X and XIV based on negligent failure to warn are **DISMISSED**. Counts V, XVIII and the portion of Counts I, X, and XIV based on negligent design defect **REMAIN**.

　　　　**IT IS FURTHER ORDERED GRANTING** Defendants' Supplemental Motion for Summary Judgment (Doc. 89). Count XVII is **DISMISSED**.

　　　　**IT IS FURTHER ORDERED DENYING WITHOUT PREJUDICE** the motions seeking to limit case specific testimony (Docs. 31, 33). The parties may refile motions seeking to limit case specific testimony in light of the claims remaining as set forth in this Order. The parties shall comply with the Local Rules of Practice of the District Court for the District of Arizona, including LRCiv 7.2(*l*) requiring the parties to meet and confer.

　　　　**IT IS FURTHER ORDERED DIRECTING** the parties to submit their Joint Proposed Pretrial Order in the form attached hereto within **45 days** of the date of this Order.

　　　　**IT IS FURTHER ORDERED DIRECTING** the parties to file a **joint statement** within **14 days** of the date of this Order setting forth good cause why the Court should not refer this case to a Magistrate Judge to conduct a settlement conference.

　　　　Dated this 27th day of September, 2021.

Honorable John C. Hinderaker
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ,<br><br>            Plaintiff,<br><br>v.<br><br>,<br><br>            Defendant. | No. CV-XXX-XXXXX-TUC-JCH<br><br>**[Proposed Joint Pretrial Order]** |

Pursuant to the scheduling order entered [DATE], the following Joint Proposed Pretrial Order is to be considered at the Final Pretrial Conference set on [DATE] at [TIME]:

**I.      PARTIES AND COUNSEL**

Identify by stating the name, mailing address, phone number, and email address of each party and his/her/its counsel.

Plaintiff(s):

Defendant(s):

**II.      NATURE OF ACTION**

Provide a concise statement of the type of case, including the cause of action and the relief sought. (e.g., This is a products liability case wherein the plaintiff seeks damages for personal injuries sustained when he fell from the driver's seat of a forklift. Plaintiff contends the forklift was defectively designed and manufactured by the defendant and the defects were a producing cause of his injuries and damages.)

**III.   JURISDICTIONAL STATEMENT**

For each claim, state the basis for the Court's jurisdiction. (e.g., Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.)

**IV.   JURY TRIAL DEMAND**

State whether a jury trial has been demanded as to all or any of the issues and whether the jury demand is contested.

**V.   THE PARTIES' CONTENTIONS**

For each claim alleged in the complaint, any counterclaim or cross-claim, and any defense, affirmative defense, or the rebuttal or a presumption where the burden of proof has shifted, the party having the burden of proof must list the elements that must be proven, or standards that must be established, for the party to prevail on the claim or defense and set forth the relief (e.g., monetary damages) sought. Citation to controlling legal authority is required. (e.g., In order to prevail on this products liability case, the plaintiff must prove the following elements . . . .)

**V.   STIPULATIONS AND UNCONTESTED ISSUES OF FACT AND LAW**

Identify any stipulations and uncontested issues of fact and law.

**VI.   CONTESTED ISSUES OF FACT**

Identify each issue of fact to be tried and determined. Each issue of fact must be stated separately and in specific terms, followed by the parties' contentions as to each issue. E.g.:

Issue:

Plaintiff(s) contends:

Defendant(s) contends:

**VII.   CONTESTED ISSUES OF LAW**

Identify each issue of law—substantive, evidentiary or procedural, and the measure or type of relief sought—to be tried and determined. Each issue of law must be stated concisely, separately and in specific terms, followed by the parties' contentions as to each issue. E.g.:

- 2 -

Issue:

Plaintiff(s) contends:

Defendant(s) contends:

**VIII.  LIST OF WITNESSES**

A.    Each party must provide a list of witnesses it intends to call at trial that separately identifies those that the party expects to call at trial and those it may call if the need arises. Detail all scheduling restrictions that are unique to any witness. (e.g., Plaintiff Witness John Doe must testify on March 1-2, 2020 because ....)

B.    As to each witness identify whether the witness is a fact or expert witness including a brief statement of the expected testimony of any expert witness.

C.    If any additional witness comes to the attention of counsel prior to the trial, a supplemental list and summary must be prepared, served on the opposing party, and filed with the Court. The supplemental list must include the reason why the witness was not set forth in the Joint Proposed Pretrial Order.

D.    The following text must be included in this section: "By signing this proposed Joint Pretrial Order a party understands that it is responsible for subpoenaing each witness it wishes to have testify. Each signatory understands that any witness a party wishes to call must be listed on that party's list of witnesses and that party cannot rely on the witness being listed or subpoenaed by another party."

**IX.   LIST OF EXHIBITS**

A.    Provide a numbered list of all exhibits the parties agree are admissible in evidence. List Plaintiff's and Defendant's exhibits separately, provide sufficient information to identify the exhibit, and separately identify those exhibits that the party expects to offer and those it may offer if the need arises.

(e.g.: Plaintiff's Exbibit 1 – City Hospital records of Plaintiff from March 1, 2020 to March 22, 2020. Plaintiff expects to offer exhibit at trial. Defendant objects for lack of foundation because...(all objections must specify the specific

grounds for the objection)).

B.   Provide a numbered list of all exhibits for which the parties have reached a stipulation, including a brief description of the stipulation reached. List Plaintiff's and Defendant's exhibit separately, provide sufficient information to identify the exhibit, and separately identify those exhibits that the party expects to offer and those it may offer if the need arises.

C.   Provide a numbered list of all exhibits objected to by the party against whom the exhibit is to be offered. List Plaintiff's and Defendant's exhibits separately, provide sufficient information to identify the exhibit, and separately identify those exhibits that the party expects to offer and those it may offer if the need arises.

D.   The following text must be included in this section: "By signing this Proposed Joint Pretrial Order a party acknowledges that any objection to an exhibit not specifically stated herein is waived."

X.   **DEPOSITIONS TO BE OFFERED**

A.   List the deposition testimony that may be used at trial, identifying by page and line number the portion(s) that will be read or submitted and whether any such portion(s) are subject to objection. If the party against whom deposition testimony will be offered objects to the use of any portion(s) of the deposition, succinctly state the grounds for the objection and any response. The party offering the deposition testimony must provide the Court with a hard copy of the deposition testimony. The offering party must highlight in color the portion(s) of the deposition testimony. If multiple parties are offering the same deposition testimony, only one copy of the deposition must be provided, and the copy must contain each party's highlighting (each party should use a different color).

B.   The following text must be included in this section: "By signing this Joint Proposed Pretrial Order a party acknowledges that any deposition testimony not listed as provided herein will not be allowed, absent good cause, and any

objections not specifically raised herein are waived."

## XI.   PRETRIAL DEADLINES

    A.    For a Jury Trial

        1.    Trial briefs may be filed only upon the Court's request.

        2.    Proposed voir dire, deposition testimony, objections to exhibits and depositions, stipulations, interrogatories to the jury, and stipulated jury instructions must be filed and served upon each party thirty (30) days before trial unless the Court directs otherwise.

        3.    Non-stipulated jury instructions, together with a concise supporting argument, must be filed with the Court and served upon each party thirty (30) days before trial unless the Court directs otherwise.

        4.    Objections to the non-stipulated jury instructions must be filed with the Court and served upon each party fourteen (14) days thereafter. Replies are not permitted without leave of Court.

        5.    All proposed jury instructions must conform with Local Rule 51.1.

        6.    Motions in limine, including *Daubert* motions, must be filed at least thirty (30) days before trial. Oppositions to motions in limine and *Daubert* motions are due within fourteen (14) days.. Motions in limine, *Daubert* motions, and oppositions are limited to three (3) pages. Replies are not permitted without leave of Court.

    B.    For a Bench Trial

        1.    Trial briefs may be filed only upon the Court's request.

        2.    Objections to exhibits, deposition testimony, motions in limine, *Daubert* motions, and stipulations must be filed and served at least thirty (30) days before trial unless the Court directs otherwise.

        3.    Proposed findings of facts and conclusions of law may be filed only upon the Court's request.

## XII.   ESTIMATED LENGTH OF TRIAL

Each party must identify the estimated length of time it will take to present its case:

___ hours for opening statements

___ hours for Plaintiff's case-in-chief

___ hours for Defendant's case-in-chief

___ hours for closing arguments

## XIII.   ADDITIONAL INFORMATION HELPFUL TO THE COURT

A.   Identify all motions that remain pending on the docket as of the date of this Joint Proposed Pretrial Order.

B.   Identify other matters which will aid in the effective presentation or disposition of the case.

C.   Identify other information that may be helpful to the Court.

## XIV.   INFORMATION FOR COURT REPORTER

A.   The parties must file a "Notice to Court Reporter" **one week before trial** containing the following information that may be used at trial:

1.   Proper names, including those of witnesses;

2.   Acronyms;

3.   Geographic locations;

4.   Technical (including medical) terms, names, or jargon;

5.   Case names and citations; and

6.   Pronunciation of unusual or difficult words or names.

B.   Send (or transmit electronically) to the court reporter a copy of the concordance from key depositions.

C.   In the "Notice to Court Reporter" indicate whether a request for realtime, daily copy, and/or expedited transcripts is anticipated.

XV.   **MODIFICTION OF ORDER**

Upon the parties' or the Court's motion, the Court may modify the Final Pretrial Order to prevent manifest injustice or for good cause.

XVI.  **ADOPTION**

The Court may adopt this proposed Joint Pretrial Order at the Pretrial Conference or a subsequent hearing.


_____            _____
Attorney for Plaintiff                     Attorney for Defendant