**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karmen Thornton,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Ethicon Incorporated, et al.,<br><br>　　　　　Defendants. | No. CV-20-00460-TUC-JCH<br><br>**ORDER** |

This is a products liability action involving a pelvic mesh device made by Defendants Ethicon, Inc. and Johnson & Johnson. Plaintiff Karmen Thornton ("Plaintiff") received an implant of Defendants' TVT-O[1] device and claims that it was defective and injured her. Plaintiff sued in May 2016 as part of a multidistrict litigation ("MDL") proceeding in the United States District Court for the Southern District of West Virginia. (Doc. 1.) *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327 (S.D. W. Va. 2012). Her case was transferred to this Court on October 28, 2020. (Docs. 47, 61.) The following claims remain for trial: Strict Liability-Design Defect (Count V), Discovery Rule and Tolling (Count XVIII) and the portion of Plaintiff's negligence claims (Counts I, X, and XIV) to the extent they are based on negligent design defect. (Doc. 101 at 28-29.)

Defendants filed a motion to exclude certain expert opinions of Dr. Bruce Rosenzweig under Federal Rules of Evidence 401, 402, and 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (Doc. 112.) The motion is fully briefed. (Docs.

---
[1] Transobturator urethral sling. (Doc. 37 at 1.)

113, 120.)[2] For the reasons set forth below, the motion will be granted in part and denied in part.

## I. RELEVANT BACKGROUND

Plaintiff underwent a hysterectomy and was implanted with Defendants' TVT-O mesh device by Dr. Vicki Sherman on July 13, 2006. (Doc. 1 at 4; Doc. 37 at 1.) She underwent these procedures for the treatment of stress urinary incontinence ("SUI"), abnormal uterine bleeding, and uterine fibroids. (Doc. 37 at 1.) After implantation of the TVT-O device Plaintiff suffered from chronic pelvic pain and dyspareunia.[3] *Id*.

On October 6, 2015, Plaintiff saw Dr. Sherman and expressed concern that her pelvic pain may be due to her bladder mesh. *Id.* at 145-146. Dr. Sherman examined Plaintiff and did not notice any problems with the TVT-O mesh. (Doc. 37-2 at 36-37.) At that visit Dr. Sherman told Plaintiff that her pelvic pain was muscular in nature and not related to the mesh. *Id.* at 37. In 2016, Plaintiff saw Dr. Christian Twiss who determined her TVT-O device had eroded into her vaginal wall. (Doc. 97-2 at 45, 154.) On March 18, 2016, Dr. Twiss performed a transvaginal excision of the TVT-O device, bilateral groin exploration for sling excision and cystourethroscopy for her urethral sling. (Doc. 37 at 1-2.)

Plaintiff's case was contained in Wave 11 of the MDL. (Doc. 81 at 17.) While this case was before the MDL Court, Plaintiff disclosed Bruce Rosenzweig, M.D., as an expert on certain issues of general and specific medical causation and the parties adopted their prior briefing filed in other MDL waves on *Daubert* motions. (Doc. 81 at 17-20.) District Judge Goodwin entered orders in Waves 1-3 of the MDL related to a number of expert witnesses put forth by the parties, including Dr. Rosenzweig. (Doc. 81 at 17-20; Docs. 81-1, 81-2, 82-3 and 81-4 (MDL Court's prior *Daubert* Orders)). This Court will adopt the MDL Court's rulings on all *Daubert* issues.

## II. DEFENDANTS' MOTION

Dr. Rosenzweig has performed hundreds of surgeries specifically dealing with

---

[2] Oral argument will not aid the Court's decision and the request for oral argument is denied. *See* Fed. R. Civ. P. 78(b).
[3] Pain with intercourse.

- 2 -

complications arising from the placement of pelvic mesh and has published numerous peer-reviewed articles on the treatment of SUI. (Doc. 113 at 2.)[4] As more fully set forth in his expert report, Dr. Rosenzweig opines, *inter alia*, that Plaintiff sustained groin, pelvic and vaginal pain, dyspareunia requiring revision surgery and mixed urinary incontinence all of which are attributable to the implantation of Defendants' TVT-O and the characteristics of the mesh. (Doc. 112-3 at 16.)

Defendants move to exclude Dr. Rosenzweig's opinions: (1) regarding the adequacy of the TVT-O's Instructions for Use ("IFU") and the informed consent process; (2) regarding Plaintiff's quality of life; (3) regarding certain non-mesh alternative surgical procedures; (4) that Defendants characterize as inadmissible and/or irrelevant general opinions; (5) regarding Ethicon's knowledge, state of mind, and corporate conduct; and (6) constituting improper legal conclusions and/or containing legal terms of art. (Doc. 112 at 2.)

**III.   LEGAL STANDARD**

Rule 702, Fed. R. Evid., provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 104(a), Fed. R. Evid., requires the proponent of the expert testimony to show by a preponderance of the evidence that the proposed testimony is admissible under Rule

---

[4] Senior Judge David Campbell has recognized, "Dr. Rosenzweig has decades of experience treating female urological conditions." *Triant v. Am. Med. Sys. Inc.*, No. CV-12-00450-PHX-DCG, 2020 WL 4333645, at *2 (D. Ariz. July 28, 2020). Senior Judge Roslyn Silver has recognized that Dr. Rosenzweig has performed over a thousand pelvic floor surgeries and has performed over 300 surgeries dealing with complications related to synthetic mesh. *Gomez v. Am. Med. Sys. Inc.*, No. CV-20-00393-PHX-ROS, 2021 WL 1163087, at *6 (D. Ariz. Mar. 26, 2021).

702. *See* Fed. R. Evid. 104(a); *McBroom v. Ethicon, Inc.*, No. 2:20-cv-02127-DCG, 2021 WL 2709292, at *2 (D. Ariz. July 1, 2021) (citing *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)). "The trial court acts as a gatekeeper for expert testimony to assure that it 'both rests on a reliable foundation and is relevant to the task at hand.'" *McBroom*, 2021 WL 270929, at *2 (quoting *Daubert*, 509 U.S. at 597); *see Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3-4 (D. Ariz. Aug. 2, 2019). Evidence is relevant if is has "any tendency to make a fact more or less probable than it would be without the evidence," and the fact must be "of consequence in determining the action." Fed. R. Evid. 401(a), (b).

### IV.　ANALYSIS

#### a.　Opinion About the Adequacy of the IFU and Informed Consent

Dr. Rosenzweig opines that the TVT-O IFU "failed to fully disclose the risks and complications (both early and late)[]" and that "some risks included by Ethicon in the IFU are mischaracterized to minimize the actual risk." (Doc. 112 at 3, quoting Doc. 112-3 at 19). Dr. Rosenzweig also opines that "Ms. Thornton's implanting surgeon was not able to provide the necessary and required information to her for an informed consent because Ethicon failed to fully reveal such information[.]" (Doc. 112 at 3, quoting Doc. 112-3 at 18.)

Defendants argue that Dr. Rosenzweig's opinions on the adequacy of the IFU and Dr. Sherman's informed consent process should be excluded as irrelevant. (Doc. 112 at 3-4.) They point out that this Court granted summary judgment on Plaintiff's strict liability failure to warn claim finding, in part, that implanting physician Dr. Sherman "was independently aware of the risk of the injuries that [Plaintiff] claims [she suffered] in this lawsuit, including, but not limited to pain, pain with intercourse, and urinary problems." (Doc. 112 at 3-4, citing Doc. 101 at 21-22.) Accordingly, they argue that Dr. Rosenzweig's opinions regarding warnings and informed consent "do not fit the facts of this case and should be excluded as irrelevant and unhelpful." *Id*. at 4. They rely on *McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DCG, 2021 WL 1208976, at *5 (D. Ariz. Mar. 30, 2021).

Plaintiff argues that the IFU and warnings included in the TVT-O's packaging are part of the product's design. (Doc. 113 at 3.) She argues that in design defect cases the jury is charged with considering the risks associated with a product, here, the TVT-O. *Id.* Relying on *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 962 & n.2 (Ariz. Ct. App. 2003), Plaintiff urges that the jury is entitled to consider factors such as the likelihood of injury and its probable seriousness, the obviousness of a product's danger, and common knowledge and normal public expectations of the danger, and insists that the IFU contains relevant information for the jury's consideration. *Id.* at 4.

As explained herein, the Court agrees with Defendants with respect to the informed consent discussion but agrees with Plaintiff with respect to the TVT-O's IFU. In *McBroom*, the district court rejected a relevance argument that is similar to the one Plaintiff makes here with respect to informed consent. *McBroom*, 2021 WL 1208976, at *5. There, the district court rejected the plaintiff's argument that her expert was qualified to testify about the warnings that were not available to implanting physicians at the relevant time reasoning:

> [t]he [c]ourt has now granted summary judgment on [the p]laintiff's failure to warn and misrepresentation claims . . . the claims remaining for trial are for design defect, negligent design, and punitive damages. Dr. Ostergard's opinions about the informed consent process are not relevant to these claims, and testimony about informed consent would serve only to waste time and confuse the issues. The [c]ourt will exclude Dr. Ostergard's opinions and testimony about informed consent under Rules 402 and 403 . . .

*Id.*

Plaintiff here does not address *McBroom*. Instead, she contends that Dr. Rosenzweig's opinions on the adequacy of the TVT-O's IFU and the informed consent discussion with the implanting physician are relevant to the jury's risk/benefit analysis. However, this Court granted summary judgment on Plaintiff's strict liability failure to warn claim finding no genuine issue of material fact for trial on "whether additional alleged warnings would have caused Dr. Sherman to act differently . . . " (Doc. 101 at 25 & n.14.) As such, the Court is persuaded by *McBroom* and finds that Dr. Rosenzweig's opinion on

the adequacy of the informed consent process is irrelevant and may lead to a waste of time or confuse the issues. Defendants' request to preclude Dr. Rosenzweig's testimony on the adequacy of the informed consent process will be granted.

The Court finds differently with respect to Dr. Rosenzweig's opinion regarding the adequacy of the TVT-O's IFU. In *Golonka v. Gen. Motors Corp.*, 65 P.3d at 962 & n.2, relied upon by Plaintiff, the state court of appeals recognized that Arizona law employs a risk/benefit analysis in strict liability design defect cases and also recognized a list of factors that the jury may consider in its analysis in such cases. Under Arizona law, the jury may consider a variety of factors in its risk/benefit analysis, including "the avoidability of injury by care in the use of the product (including the effect of instructions or warnings)[.]" *Golonka*, 65 P.3d at 962, n.2 ("The supreme court has approved the following non-exhaustive list of factors devised by leading commentator Dean Wade: . . . (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings) . . .") *See also, Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 879-80 (Ariz. 1985). Defendants do not address *Golonka* or *Dart*. (Doc. 120 at 1-3.) Under Arizona law, the Court finds that Dr. Rosenzweig's proffered testimony relating to the adequacy of the TVT-O's IFU is relevant to Plaintiff's Strict Liability-Design Defect claim.

In sum, Defendant's motion to preclude Dr. Rosenzweig's expert opinions on the adequacy of the informed consent process and the TVT-O's IFU will be granted in part and denied in part as explained above.

### b. Opinion on Quality of Life

Dr. Rosenzweig opines that Plaintiff developed complications that are attributable to the TVT-O and that such complications "have caused a significant impact on [her] quality of life." (Doc. 112-3 at 20.) Relying on *Burton v. Ethicon*, No. CV 5:20-280-DCR, 2020 WL 5809992, at *5 (E.D. Ky. Sept. 29, 2020) and *In re C.R. Bard, Inc.*, 948 F.Supp.2d 589, 608 (S.D. W. Va. 2013),[5] Defendants argue that this testimony is inadmissible because diminished quality of life is a concept that is understandable to the average juror. (Doc.

---

[5] *Burton* relies on *In re C.R. Bard, Inc*. *See Burton*, 2020 WL 5809992, at *5.

- 6 -

112 at 4; Doc. 120 at 4.)

Plaintiff argues that Dr. Rosenzweig's opinion on the quality of her life is admissible because his opinion is based on a reasonable degree of medical certainty formed after a thorough review of Plaintiff's medical records and based upon his clinical experience in treating patients with SUI. (Doc. 113 at 4-5.) Plaintiff argues that *Burton* is distinguishable because in that case the expert was "'merely regurgitating factual information that is better presented directly to a jury[,]'" whereas in this case "Dr. Rosenzweig will be discussing medical information[] and basing that information on his own medical expertise." *Id*. at 5.

In *Burton*, the district court rejected the argument that the expert witness would offer more than a recitation of the plaintiff's subjective complaints because the expert's opinion was based on his independent review of medical literature and experience treating women with pelvic organ prolapse. *See Burton*, 2020 WL 5809992 at *5. The court held that the proposed expert testimony regarding diminished quality of life was unnecessary because it is a concept that is understandable to the average juror. *Id*.

*Burton* rejected the same argument that Plaintiff makes in this case. The Court finds *Burton* persuasive despite Plaintiff's effort to distinguish it from the instant case. Defendant's motion to exclude by Dr. Rosenzweig's opinions on Plaintiff's quality of life will be granted.[6]

### c. Opinion on Non-Mesh Alternative Surgical Procedures

As to non-mesh alternative surgical procedures, Dr. Rosenzweig opines, in relevant part:

> Safer alternative designs, rather than the TVT-O polypropylene mesh product, existed for this patient. I have experience with many of these safer alternative designs[] and based on my experience and review of medical literature and other materials, it is my opinion that these alternative designs were safer and feasible for [Plaintiff]. These safer alternative designs include:

---

[6] As in *Burton*, should Defendants attempt to show that diminished quality of life could not have resulted from the problems alleged by Plaintiff, Plaintiff is permitted to rebut that showing based upon Dr. Rosenzweig's review of the relevant medical literature and his experience treating patients. *See Id*.

- 7 -

>    (1) The use of sutures, including delayed absorbable sutures like PDS, in a colposuspension procedure, like the Burch;
>    (2) An autologous[7] fascia sling;
>    (3) An allograft[8] sling such as Repliform; and
>    (4) A sling with less polypropylene such as Ultrapro.
>
> These safer alternative designs would have significantly reduced the risk of the injuries to [Plaintiff], as I have described in my report, that were a result of the specific design flaws of the TVT-O, including banding, scarring, cording, scar plate, chronic inflammation, chronic foreign body reaction, dense, heavy, stiff[,] deformed and rigid mesh.

(Doc. 112-3 at 22-23.) Defendants argue that Dr. Rosenzweig opines as to alternative non-mesh surgical treatments for SUI—not alternative designs. (Doc. 112 at 4-5.) They argue that Dr. Rosenzweig's opinions as to alternative non-mesh surgical treatments for SUI are not relevant, and are thus inadmissible, because the alternative non-mesh surgical treatments for SUI are not products. *Id*. at 5-8; Doc. 120 at 4.

Plaintiff argues that Dr. Rosenzweig's opinions regarding non-surgical treatments for SUI are relevant because Arizona uses a risk/benefit test in design defect cases. Under the risk/benefit test a jury is permitted to consider such factors as the usefulness and desirability of the product. (Doc. 113 at 5-8.) Plaintiff urges Dr. Rosenzweig's opinions on alternative surgical procedures are relevant to whether Defendants' mesh products are unreasonably dangerous, whether Defendants were negligent is designing them, and to rebut assertions by Defendants that their products are the safest and most effective treatments for SUI. *Id*. at 7.

As mentioned above, the Court agrees with Plaintiff that Arizona uses a risk/benefit analysis in strict liability design defect cases. *See Golonka*, 65 P.3d 962 & n.2. In strict liability, the risk/benefit analysis is an alternative method of determining whether a product is unreasonably dangerous. *See Dart*, 709 P.2d at 880 (holding that "[u]se of these

---

[7] According to Defendants, "autologous repairs involve harvesting tissue from another part of the patient's body and implanting it in the pelvic area by abdominal incision—there is no regulated medical device involved at all." (Doc. 112 at 6-7.)
[8] According to Defendants, "[a]n 'allograft' is tissue from another human, which, in the case of Repliform™, then undergoes a proprietary process and is sold in a sheet. It is regulated by the FDA as human tissue for transplantation." (Doc. 112 at 7.)

- 8 -

risk/benefit factors . . . is, on the contrary, simply an alternative method of determining unreasonable danger."). In determining whether a product is unreasonably dangerous, the fact-finder may consider:

> (1) the usefulness and desirability of the product,
> (2) the availability of other and safer products to meet the same need,
> (3) the likelihood of injury and its probable seriousness,
> (4) the obviousness of the danger,
> (5) common knowledge and normal public expectation of the danger (particularly for established products),
> (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and
> (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

*See Dart,* 709 P.2d 879-80.

In *Gomez v. Amer. Med. Sys.*, noting a lack of Arizona law directly addressing the issue, the district court recognized that "[t]he benefit of a product directly relates to its value compared to alternative options, including alternative procedures." *Gomez*, 2021 WL 1163087, at *7 (citing *Messina v. Ethicon*, No. 6:20-CV-117-ORL-LRH, 2020 WL 7419586, at *4 (M.D. Fla. Dec. 17, 2020) ("Dr. Rosenzweig's opinion that alternate medical procedures were safe and effective—that is, they are safer than the accused product and were feasible for [the plaintiff]—are relevant to demonstrating that the [product's] inherent risks outweigh its benefits."). Recognizing also that Dr. Rosenzweig will be subject to cross-examination, the district court in *Gomez* held, "Dr. Rosenzweig will be allowed to testify about alternative design options regarding alternative surgical procedures." 2021 WL 1163087, at *7.[9] *See also, Herrera-Nevarez v. Ethicon, Inc.*, No. 17 C 3930, 2017 WL 3381718, at *7 (N.D. Ill. Aug. 6, 2017) (holding that under Illinois law,

---

[9] In *Triant v. Amer. Med. Sys., Inc.*, 2020 WL 433364, at *3-4, the district court mentioned that it was "inclined to agree with Judge Goodwin that an alternative surgical procedure cannot be used to show a defective design of a product . . . **[b]ut Plaintiffs have also asserted strict liability claims . . . and it is possible that alternative procedures may be admitted to show that a product is unreasonably dangerous**." (Emphasis added.) The district court denied the defendants' motion to preclude Dr. Rosenzweig's opinion regarding alternative designs "deferr[ing] the issues for later consideration" in a motion in limine or at trial. *Id*. *Triant* never decided the issue because the matter settled.

- 9 -

using the "risk-utility" test, "the availability of other safe and effective procedures to treat the same condition is relevant and admissible . . . to show the utility of the defendants' product . . . "); *Wilteng v. Ethicon, Inc.*, No. 12-cv-2400, 2017 WL 4467455, at *4 (N.D. Ill. Oct. 6, 2017) (under the risk-utility analysis "[t]he availability of other safe and effective procedures (including surgical procedures) to treat the same condition is relevant and admissible to show the utility of a product."); *Bell v. Ethicon, Inc.*, No. 4:20-cv-3678, 2012 WL 1111071, at *6-7 (S.D. Tex. Mar. 23, 2021) ("Because Texas also applies a risk-utility analysis, the testimony [of Dr. Rosenzweig] on alternative surgical procedures is relevant and helpful to the jury as it informs whether the utility of the products at issue were outweighed by the risks in light of alternative treatments."); *Ellerbee v. Ethicon, Inc.*, No. 8:20-cv-1514-TPB-AEP, 2021 WL 2010640, at *2 (M.D. Fla. May 20, 2021) (under Florida law, finding that "Dr. Rosenzweig's opinions that alternative medical procedures were safe and effective are relevant to demonstrating the product's inherent risks and assist the jury in appreciating the risk-benefit analysis.").

Defendants rely primarily[10] on *Mullins v. Johnson & Johnson*, No. 2:12-CV-0952, 2017 WL 711766 (S.D. W. Va. Feb. 23, 2017). There, the MDL Court, applying West Virginia law, determined that a plaintiff must put forth evidence of a safer alternative design in order to make a prima facia case for strict liability based on design defect. The MDL court held "evidence that a surgical procedure should have been used in place of a device is not an alternative, feasible design in relation to the TVT." *Id.* at *2. That court also held that polypropylene sutures could not serve as an alternative design finding they were not a "product." *Id.* at *2-3.

The Court does not find *Mullins* persuasive. In that case, the MDL Court was

---

[10] Defendants spend the majority of their argument addressing case law in jurisdictions other than Arizona that do not appear to use the risk/benefit test. (Doc. 112 at 4-9.) The Court does not find this case law persuasive. The Court has determined that Arizona law applies to this case. (Doc. 101 at 11-16.) Arizona applies the risk/benefit test in strict liability design defect cases and the risk/benefit test allows the jury to consider, *inter alia*, the usefulness and desirability of the product. While there is limited case law in this district, this Court does not write on a clean slate. Under *Gomez*, the Court finds that alternative procedures, not merely alternative products, are relevant to a jury's consideration of the usefulness and desirability of the product. *Gomez*, *supra*.

- 10 -

applying West Virginia law, not Arizona law. As explained above, in strict liability design defect cases Arizona applies the risk/benefit test which permits a jury to consider, *inter alia*, the usefulness and desirability of the product.[11] As recognized by the district court in *Gomez*, "[t]he benefit of a product directly relates to its value compared to alternative options, including alternative procedures." *Gomez*, 2021 WL 1163087, at *7.

Under Arizona law, the Court finds Dr. Rosenzweig's proffered opinions as to non-synthetic mesh procedures as an alternative to the TVT-O relevant to Plaintiff's strict liability design defect claim. Defendants' motion to preclude Dr. Rosenzweig's opinions regarding non-mesh surgical procedures will be denied.

### d. Opinions on Complications

Defendants move to preclude Dr. Rosenzweig's opinions regarding complications that Plaintiff has not experienced. (Doc. 112 at 10.) Defendants point out that Dr. Rosenzweig identifies "biofilms and infections" in his expert report but he does not identify "infection" as an injury Plaintiff experienced and there is no evidence in the medical records that Plaintiff's mesh was ever infected. *Id*. Plaintiff represents that Dr. Rosenzweig "only intends to testify about any complications [she] has not yet experienced if he opines that she will likely suffer those complications in the future." (Doc. 113 at 8.) In reply, Defendants argue that Plaintiff does not identify what complications she has not yet experienced that Dr. Rosenzweig will opine that she is likely to suffer in the future or whether such testimony is reliable. (Doc. 120 at 6.)

The Court finds Dr. Rosenzweig's opinions on complications that Plaintiff has not suffered and is not likely to suffer in the future irrelevant. *See McBroom*, 2021 WL 2709292, at *20 (holding that the court will follow the MDL Court's approach and preclude Dr. Rosenzweig from opining about complications Plaintiff has not suffered and is not likely to suffer in the future) (additional citations omitted)).[12]

---

[11] The defendants in *McBroom*, 2021 WL 2709292 at *23, also relied on *Mullins* for the same argument with respect to expert Dr. Guelcher's opinions on alternative treatment procedures that were offered in that case. *McBroom* expressly rejected the defendants' reliance on *Mullins* holding, "[the d]efendants' reliance on *Mulllins* is misplaced because that case applied Virginia law." *Id*.

[12] The Court may reconsider this ruling if Plaintiff can show at trial that other complications

- 11 -

However, under Arizona law, a plaintiff may recover damages for pain and suffering, disability, mental anguish, and medical expenses that are "reasonably probable" to be experienced in the future. *See McBroom*, 2021 WL 1208976, at *3-4 (citing *Romo v. Unites States*, No. 4:12-CV-41-TUC-JAS, 2015 WL 12940759, at *7 (D. Ariz. Feb. 6, 2015) ("Arizona law specifically authorizes damages . . . 'reasonably probable to be experienced in the future as a result of the injury.' ") (quoting RAJI (Civil 5th) (additional citations omitted)). "The Arizona Supreme Court made clear in *Saide* [*v. Stanton*, 659 P.2d 35, 37 (Ariz. 1983)] that whether future complications and medical expenses 'are reasonably probable or certain is determined from all the relevant circumstances which are before the court.'" *McBroom*, 2021 WL 1208976, at *4 (quoting *Saide*, 659 P.2d at 37) (additional citations omitted). The district court in *McBroom* denied the defendants' motion to preclude expert testimony on complications that the plaintiff had not yet suffered but may suffer in the future "with the caveat that [the d]efendants may object at trial if they believe [the p]laintiff intends to elicit testimony from [the expert] about complications that [the p]laintiff does not claim are reasonably probable to occur in the future." *Id*. Similarly, this Court will deny Defendants' request to preclude Dr. Rosenzweig's opinions regarding reasonably probable future complications with the caveat that Defendants may object at trial if they believe Plaintiff intents to elicit opinions from Dr. Rosenzweig about complications that are not reasonably probable to occur to Plaintiff in the future.

In sum, Defendants' request to preclude Dr. Rosenzweig's opinions on conditions that Plaintiff has not experienced and is not likely to experience in the future is granted. Defendant's request to preclude Dr. Rosenzweig's opinions on conditions that Plaintiff has not experienced but that she may experience in the future to a reasonable degree of probability is denied.

/ / /

---

that she has not suffered are relevant to her remaining claims under Arizona law. *See McBroom*, 2021 WL 2709292, at *20 n.21 (citing *Ellerbee*, 2021 WL 2010640, at *3 (holding that "evidence concerning risks and complications not experienced by Plaintiffs appear to be both relevant and admissible as part of the risk-utility analysis"). Should Plaintiff wish to raise this issue at trial, she must do so outside the jury's presence.

### e. Knowledge/State of Mind/Corporate Conduct

Defendants seek to preclude Dr. Rosenzweig from offering testimony regarding Ethicon's knowledge, state of mind, and conduct. (Doc. 112 at 11.) Defendants provide a sampling of Dr. Rosenzweig's opinions:

> That Ethicon failed to inform physicians about risks associated with the TVT-O despite the fact that Ethicon had scientific knowledge of the risks.
>
> That Ethicon mischaracterized certain risks in the IFU in order to minimize the actual risk.
>
> That Ethicon knew that the old construction mechanically cut mesh (Prolene) was not appropriate for use in the TVT-O.
>
> That Ethicon put profits before patient safety.
>
> That the IFU is inadequate based on the adverse reaction and risks associated with the TVT-O that have been known to Ethicon from the time the TVT-O was first sold and marketed.

(Doc. 112 at 11.) (quotations omitted.) Plaintiff responds that the MDL Court previously ruled that an expert reviewing internal corporate documents is permitted to explain his opinions but cannot address matters related to corporate state of mind or other matters related to corporate conduct. (Doc. 113 at 8.)[13] Plaintiff further states that "Dr. Rosenzweig has testified at trial many times and he and Plaintiff's counsel understand the limits that have been placed on expert testimony by the MDL Court." *Id*. at 8-9.

"Courts have repeatedly recognized 'the opinions of expert witnesses on the intent, motives, or states of mind of corporations, regulatory agencies or others have no basis in any relevant body of knowledge or expertise." *Gomez*, 2021 WL 1163087, at *4 (citing *Aya Healthcare Servs. v. AMN Healthcare*, No. 17-CV-205-MMA (MDD), 2020 WL

---

[13] In the MDL Court Judge Goodwin held, " . . . many of the motions seek to prohibit an expert from parroting facts found in corporate documents and the like. I caution the parties against introducing corporate evidence through expert witnesses. Although an expert may testify about his review of internal corporate documents solely for the purpose of explaining the basis for his or her expert opinions—assuming the expert opinions are otherwise admissible—he or she may not offer testimony that is solely a conduit for corporate information." (Doc. 81-3 at 21.)

2553181, at *5 (S.D. Cal. May 20, 2020) (citations and internal quotation marks omitted); *In re Bos. Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2326, 2018 WL 2426159, at *2 (S.D.W. Va. May 29, 2018)).[14]

The Court will grant Defendants' motion to the extent that it seeks to preclude Dr. Rosenzweig's opinions regarding Defendants' conduct, knowledge, or state of mind.

### f. Legal Conclusions or Legal Terms of Art

Defendants seek to preclude Dr. Rosenzweig from testifying on "several opinions in his case-specific report that constitute improper legal conclusions." (Doc. 112 at 12.) Dr. Rosenzweig opines that "Ethicon failed to act as a reasonable and prudent medical device manufacturer," and that Plaintiff suffered complications "due to the defects of the mesh" and "[a]s a result of the defects of the TVT-O." *Id*. Plaintiff responds that she will not offer legal conclusions at trial. (Doc. 113 at 9.) Referencing Dr. Rosenzweig's experience in testifying and his understanding of the limitations placed on his testimony by the MDL Court, Plaintiff argues that any objections to Dr. Rosenzweig's testimony and specific word choice should be addressed at trial. *Id*.

In *Gomez*, the district court denied as moot as similar motion brought by a medical device manufacturer that sought to exclude similar testimony by Dr. Rosenzweig where the plaintiff acknowledged the scope of permissible expert testimony and agreed not to elicit legal conclusions from her expert. *See Gomez*, 2021 WL 1163087, at *7. Here, Plaintiff acknowledges the scope of permissible expert testimony articulated by the MDL Court regarding legal conclusions and agrees to not elicit such legal conclusions.

The Court will deny as moot Defendants' motion to the extent that it seeks to preclude Dr. Rosenzweig's opinions in the form of legal conclusions and legal terms of art.

/ / /

/ / /

/ / /

---

[14] *Gomez* recognized, however, that experts such as Dr. Rosenzweig may properly offer "testimony about factual issues or the knowledge of the medical community in general [...]" *Gomez*, 2021 WL 1163087, at *5.

## V. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED GRANTING IN PART AND DENYING IN PART** Defendant's motion (Doc. 112).

Dated this 5th day of August, 2022.

_____
Honorable John C. Hinderaker
United States District Judge